**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

CRISTEN SMITH MILLER AND          CIVIL ACTION NO. 08-1624
CAMILLE SMITH FAUTH

VERSUS                            JUDGE S. MAURICE HICKS, JR.

SHERRY LOWE                       MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is Defendants Gary Honeycutt and Tatiana Honeycutt's ("Honeycutts") *Motion for Summary Judgment* (Record Document 21).  For the reasons which follow, Defendants' *Motion for Summary Judgment* is **GRANTED** in part and **DENIED** in part.  A judgment consistent with this memorandum ruling shall issue contemporaneously herewith.

**I. BACKGROUND**

The Plaintiffs, Cristen Smith Miller and Camille Smith Fauth ("Plaintiffs"), inherited a property known municipally as 1125 East Pine Island in Shreveport, Louisiana, and legally described as Lot 27 and a portion of Lot 28 in the Pine Island Subdivision, Caddo Parish, Louisiana.  Plaintiffs determined to sell the property and for that purpose engaged the services of Defendant Sherry Lowe ("Lowe"), a licensed real estate agent. Plaintiffs agreed to sell the property to the Honeycutts for $477,000.00 and entered into an Real Estate Buy/Sell Agreement ("The First Agreement") dated July 19, 2007.  The First Agreement stipulated that the  Plaintiffs

1

had an obligation to deliver "good, valid, and merchantable" title to the Honeycutts. The Honeycutts were given until closing to examine the title and notify Seller in writing of any required curative work. The Plaintiffs would then have had thirty days to cure the defect.

During the title examination, it was discovered that when Plaintiffs' parents sold part of Lot 28 over twenty years prior, they granted to the purchasers (the "Kots") a right of first refusal for the remainder of Lot 28. This right stated:

> Vendors also grant unto vendees, their heirs, successors and assigns, the right of first refusal of the remainder of said Lot 28 (all that portion of Lot 28 that is not sold to vendees by this deed); if vendors should decide to sell the remainder of said Lot 28, Vendees shall have the right to acquire same at the same price of any bona fide offer that vendors are willing to accept, and vendors shall submit such offer to vendees, in writing, and vendees shall have 60 days after such submission to acquire the property.

Thus, with the right of first refusal lasting sixty days from notice, the First Agreement could not be executed as written.

The Honeycutts, still desiring to buy the property despite the cloud on title, proposed two new contracts (the "Second Agreements") to take the place of the First Agreement. The Second Agreements stated that the Honeycutts would pay $297,000 for Lot 27 and $180,000 for the remainder of Lot 28. Closing on Lot 28 was conditioned on the Kots' right of first refusal being "removed." There was no written contractual link between the purchase of Lot 27 and Lot 28. Plaintiffs

2

accepted the pricing for the respective lots as well as the division of the contracts

with what appears to be little discussion.  Closing for Lot 27 occurred soon after the

Second Agreements were signed.  Around the same time, Plaintiffs gave the Kots

written notice of their intent to sell to the Honeycutts for $180,000 which triggered the

beginning of the sixty day right of first refusal period.

The Kots responded to the notice by stating that the $180,000 was not a bona

fide offer and alleged the price was set to prevent them from exercising their right of

first refusal.  They never sent any official notice to either the Plaintiffs or the

Honeycutts rescinding their right to purchase the property, but apparently conveyed

through their attorney that they would not file suit against either the Plaintiffs or the

Honeycutts if the sale went forward.  After the Kots' sixty day option passed without

any action being taken, Plaintiffs demanded that the Honeycutts proceed with

closing on the remainder of Lot 28.  After a series of conversations, the Honeycutts

refused, stating, among other reasons, that the contractual requirement of removing

the right of first refusal had not been satisfied since the public records still showed

the cloud on title.

Plaintiffs eventually sold the remainder of Lot 28 to the Kots for $30,000 and

now are suing their real estate agent, Lowe, and the Honeycutts for the remaining

$150,000 of the original purchase price.[1]  They argue that the Honeycutts breached

---

[1]Plaintiffs originally filed suit in state court against Sherry Lowe.  The case was removed to Federal Court by Sherry Lowe based on diversity.  Plaintiffs subsequently amended the complaint to add the Honeycutts as additional defendants.

the contract by refusing to accept the lapsing of the sixty day option as removal of the right of first refusal. They also argue that the Honeycutts are liable for the remainder under the legal theories of negligent misrepresentation, detrimental reliance, and equitable estoppel.

The Honeycutts have filed the instant motion arguing that the Court should grant summary judgment in their favor and against the Plaintiffs. They address Plaintiffs negligent misrepresentation, detrimental reliance, and equitable estoppel claims.

**II. Summary Judgment Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If

4

the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir.1996) (citations omitted). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. All factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir.2005).

**III. Law and Analysis**

As noted above, this Court's subject matter jurisdiction rests on diversity, and the parties do not appear to dispute that Louisiana substantive law governs the issue at bar. Foradori v. Harris, 523 F.3d 477, 486 (5th Cir.2008) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law") (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

**A. Equitable estoppel or Detrimental Reliance**

While Plaintiffs style the two as separate claims, Louisiana recognizes both detrimental reliance and equitable estoppel under La. C.C. art. 1967 and the elements for each are the same. See Barnett v. Saizon, 994 So.2d 668 (La.App. 1 Cir. 2008) (stating that the "theory of detrimental reliance, also referred to as promissory or equitable estoppel, is based on La. C.C. art. 1967.").

5

> Equitable estoppel has been defined as the effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. The doctrine is based on equitable considerations of good faith and is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations or silence.

Knippers v. Dr. W.W. Lambard, 620 So.2d 1368, 1374 (La.App. 2nd Cir. 1993)(citations omitted). Likewise, "[u]nder the detrimental reliance doctrine established by Louisiana law, a party is permitted to recover economic harm whenever the defendant made a representation by word or conduct upon which the plaintiff justifiably relied and because of which plaintiff changed his position to his detriment." Babkow v. Bart, 726 So.2d 423, 427 (La.App. 4th Cir. 1998)(quotation marks and citation omitted). The elements for detrimental reliance are the same as for equitable estoppel: "(1) representation by conduct or word, (2) justifiable reliance in representation, and (3) change in position to detriment because of reliance." Id. at 427; Knippers, 620 So.2d at 1374-75.

"Estoppel is not favored by Louisiana courts. It is invoked sparingly because it acts to bar the normal assertion of rights. Any party seeking to invoke estoppel must specifically plead and prove the factual elements of the doctrine." Knippers, 620 So.2d at 1374-75 (citations omitted). "If the evidence reveals that the asserting party had actual knowledge, or a ready and convenient means of determining the facts concerning representations made, equitable estoppel will not lie." Id. at 1375

(citations omitted).

Plaintiffs' claim fails because they have failed to specifically plead or produce evidence during summary judgment which would tend to prove the elements of estoppel as required by Louisiana law.  Id. At 1374.  It is not readily apparent from the petition or the response to the *Motion for Summary Judgment* exactly what representations by the Honeycutts were relied upon by Plaintiffs to their detriment. However, the facts allow two distinct possibilities.

First, Plaintiffs appear to argue they relied on the Honeycutts' promise to close if the right of first refusal were "removed."  However, this is a contractual right - since it was written into the contract - and, therefore, does not lie in equity.  The Plaintiffs seek to prevent the Honeycutts from asserting the alleged failure to remove the right of first refusal as a defense to closing.  Yet, it is this very promise to close if the right was removed on which the Plaintiffs' seek to rely.  Plaintiffs cannot both rely on the Honeycutts' promise and at the same time prevent the Honeycutts from using that promise as a contractual defense in this case. Since Louisiana does not favor the application of either equitable estoppel or detrimental reliance, and equity does not require its application under this set of facts, Plaintiffs cannot prevent the Honeycutts' assertion of contractual rights in defense to their refusal to close by way of a theory of equitable estoppel or detrimental reliance.

Second, Plaintiffs may argue that they relied on the Honeycutts' evaluation of the value of their land when they accepted the two separate contracts for lots 27 and

28. Here, too, Plaintiffs' argument fails since they were not justified in relying on any representation of the Honeycutts as to the value of the properties.

Plaintiffs were in the best position as owners of their property to know its true value. When the title search revealed that the first contract could not be completed as written, Plaintiffs chose to accept two separate contracts for lots 27 and 28 respectively. While the prices for the two pieces of land were set by the Honeycutts, Plaintiffs were under no obligation to accept the Honeycutts' assignment of value to the respective prices of the property nor were they required to accept the separate nature of the contracts. The Plaintiffs could have easily asked for each piece of land to be separately appraised or tied the contracts together. Thus Plaintiffs had a "ready and convenient means of determining" the facts at issue and the appropriateness of the offer made by the Honeycutts for the land. Plaintiffs were not justified in relying on any representation concerning the value of the land made by the Honeycutts; thus, detrimental reliance and equitable estoppel cannot lie.

## B. Negligent Misrepresentation

"[F]or [a negligent misinformation] cause of action to arise . . . there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage." Barrie v. Exterminators, Inc., 625 So.2d 1007, 1015 (La. 1993). "Whether a duty is owed is a question of law." Id. "[T]he initial inquiry is whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm." Id. at

1016. However, "[a] negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." Daye v. General Motors Corp., 720 So.2d 654, 660 (La. 1998). In deciding whether to impose a duty in a particular case, Louisiana courts examine "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." Faucheaux v. Terrebonne Consol. Gov't, 615 So.2d 289, 292 (La. 1993); Audler v. CBC Innovis Inc., 519 F.3d 239, 249 (5th Cir. 2008).

Plaintiffs have not pointed to any statute or case law to support their claim that the Honeycutts owed them a duty to supply correct information. The only misrepresentations that Plaintiffs appear to claim were made by the Honeycutts are the contractual promise to purchase the property if the right of first refusal is removed and the representation of the respective prices of the lots. However, buyers do not have an obligation to assist sellers in determining the value of their property, even when the buyer's knowledge is superior, absent some fiduciary duty or prior pre-existing personal or professional relationship between the parties that would require disclosure of the information. See Thomas v. Pride Oil, 633 F.Supp.2d 238, 242 (W.D. La. 2009) ("[T]he Petition contains no allegation that Plaintiff, who, as the landowner, presumably had possession of and access to the land that he agreed to lease, was somehow prevented from consulting an expert or experts regarding the existence of mineral deposits or lack thereof."); see also, Pioneer Valley Hospital, Inc. v. Elmwood Partners, L.L.C., 800 So.2d 932, 936 (La.

9

App. 5 Cir. 2001) ("Where the means of ascertaining the value of property are equally available to both parties, a sale may not be set aside because information relating to its value was withheld by either party.").  Even if the Honeycutts were negligent in their assessment of the values, Plaintiffs still have no statutory right to depend on the Honeycutts for accurate information.

Further, negligent misrepresentation is typically employed to remedy damages caused to a non-contracting party by a breach of contract and not between two contracting parties.  See e.g., Barrie v. Exterminators, Inc., 625 So.2d 1007 (La. 1993) (holding an exterminator who contracted with a seller liable to the non-contracting buyer for his negligent termite report); see also, Thomas C. Galligan Jr., Contortions Along the Boundary Between Contracts and Torts, 69 Tulane L. Rev. 457, 521-24 (1994) (explaining that the tort of negligent misrepresentation is primarily used to establish liability to a non-contracting party for breach of contract). It does not apply to a contracting party  who is alleged to have made an affirmative misrepresentation.

Plaintiffs have failed to present any evidence or law that would suggest that this case presents a factual issue as to the negligent misrepresentation claim.  The Honeycutts had no duty to the Plaintiffs to provide accurate information.  Therefore, Plaintiffs' claim fails.

**C. Breach of Contract Claim**

The Honeycutts have failed to address why the court should dismiss Plaintiffs'

general breach of contract claim.  A Plaintiff's petition must be liberally construed. Haskins v. Clary, 346 So.2d 193, 195 (La. 1977)("Liberal rule of pleading prevails in Louisiana and each pleading should be so construed as to do substantial justice."). Paragraph 4 of the *Amended Complaint* (Document 14) states Plaintiffs' allegation that the Honeycutts "had no legal basis for refusing to close on Lot 28."   This statement is a clear allegation of breach of contract.  Further, the core of Plaintiffs' opposition to summary judgment focuses on facts that would be used in contract interpretation (i.e. the motivations for not closing on Lot 28 and the meaning of the word "remove" in the contract).   Because a reasonable jury could find more than one meaning for the word "remove," summary judgment is not appropriate for the general contract claim since a genuine issue of material fact is still outstanding.

## IV. Conclusion

For the reasons stated above, Defendants' *Motion for Summary Judgment* (Record Document 21) is **GRANTED** in part and **DENIED** in part.  A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 4th day of December, 2009.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

11